UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER GONZALEZ, | ) | Case No.: 1:12-cv-00104 - JLT |
| Plaintiff, | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING |
| v. | ) ) | DEFENDANT'S CROSS- MOTION FOR SUMMARY JUDGMENT, AND DIRECTING |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT |
| Defendant. | ) ) | (Docs. 19-20, 24) |

Christopher Gonzalez ("Plaintiff") asserts he is entitled to supplemental security income under Title XVI of the Social Security Act, and seeks judicial review of the decision denying his application for benefits.  For the reasons set forth below, the administrative decision is **AFFIRMED**; Plaintiff's motion for summary judgment (Docs. 19-20) is **DENIED**; and Defendant's cross-motion for summary judgment (Doc. 24) is **GRANTED**.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for supplemental security income on March 31, 2008, alleging disability since his birth on March 31, 1990.  AR at 72-78.  The Social Security Administration denied his claim initially and upon reconsideration.  *Id.* at 20-31.  After requesting a hearing, Plaintiff testified

---

[1] Citations to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

before an administrative law judge ("ALJ") on May 27, 2010.  *Id.* at 12, 17.  The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on July 16, 2010.  *Id.* at 12-19.  Plaintiff requested review by the Appeals Council of Social Security, which found no reason to review the ALJ's decision and the request for review on November 10, 2011.  *Id.* at 5-7.  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on January 2, 2012, seeking review of the Commissioner's decision.  (Doc. 1).  On December 4, 2012, Plaintiff filed a motion for summary judgment, asserting the ALJ erred in finding he did not meet or medically equal the requirements of Listing 12.05(c), failing to credit the opinion of his treating physician, and evaluating credibility of his testimony and that of a third party.  (Docs. 19-20).  In addition, Plaintiff contends the ALJ "failed to credit the testimony of the vocational expert . . . in response to the hypothetical which accurately reflected [his] limitations."  (Doc. 20 at 16).  On February 1, 2013, Defendant filed a cross-motion for summary judgment, asserting the ALJ's decision is supported by substantial evidence and free of legal error.  (Doc. 24).  Plaintiff did not file a reply brief.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

**A.     Relevant Medical Evidence**

On February 16, 2005, Dr. Stanley Littleworth conducted a psychological evaluation to determine Plaintiff's "current intellectual and adaptive abilities."  AR at 236-43.  At the time, Plaintiff was enrolled in ninth grade special education classes, and his reading skills were at the fourth grade level.  *Id.* at 237.  Dr. Littleworth noted Plaintiff had prior intelligence tests in 2000 and 2003 when he was in elementary school and middle school.  *Id.* at 238-39.  He observed Plaintiff was "quite verbal"

and was "emitting almost a continual pattern of speech." *Id.* at 241.  In addition, he believed Plaintiff

"answer[ed] simple questions appropriately and in a reciprocal manner." *Id.*  Dr. Littleworth opined,

> Christopher is able to follow simple directions including test directions. His pencil grasp is awkward and he demonstrates slow visual-motor speed. Christopher was cooperative, and seemed to perceive the testing as a challenge for him to do his best. His attention and concentration skills were within normal limits, with the exception of one or two lapses in concentration when he seemed distracted by his own conversation.

*Id.* Dr. Littleworth administered the Wechsler Intelligence Scale for Children-Third Edition test, and

found Plaintiff had "a Verbal IQ of 76 (borderline range; 5th percentile), a Performance IQ of 70

(borderline range; 2nd percentile), and a Full Scale IQ of 73 (borderline range; 3rd percentile)." *Id.*

Dr. Steven Swanson performed a psychological evaluation on July 3, 2008.  AR at 350-57.  He

reviewed Plaintiff's medical and school history, and noted Plaintiff "was a slow learner but graduated

from high school" with "a certificate of completion rather than a high school diploma." *Id.* at 351.

Also, Dr. Swanson noted Plaintiff was "independently able to complete all activities of daily living,"

although he did not have a driver's license. *Id.* at 351-52.  Plaintiff told Dr. Swanson that he

participated in sports while in high school—including football, wrestling, and track—and "enjoy[ed]

going to the mall, spending time with friends, working out at the gym, throwing a football, and playing

video games." *Id.* at 352.

Testing Plaintiff's memory, Dr. Swanson found Plaintiff's "[s]hort-term, recent, and remote

memories were within normal limits based upon memory of three words (with and without time

delay), what the claimant had for dinner the night before, what school he attended in the third grade,

[and] the names of previous U.S. presidents." AR at 352-53.  Dr. Swanson administered the Wechsler

Adult Intelligence Scale-Third Edition ("WAIS-III"), and determined Plaintiff had a Verbal IQ of 83,

a Performance IQ of 77 and a Full Scale IQ of 78. *Id.* at 353.  According to Dr. Swanson, Plaintiff

"maintained satisfactory attention and concentration throughout the testing and the results [were] . . . a

valid representation of his current functioning." *Id.*  He concluded Plaintiff was "able to maintain

concentration or relate appropriately to others in a job setting." *Id.* at 356.  Further, Dr. Swanson

opined Plaintiff was able "to understand, carry out, and remember simple instructions," as well as

"respond appropriately to usual work situations, such as attendance, safety, and the like." *Id.*

On July 22, 2008, Dr. Harvey Biala completed a psychiatric review technique form and mental residual functional capacity assessment.  AR at 358-73.  Dr. Biala determined Plaintiff was "not significantly" limited in his ability to remember locations and work-like procedures; to understand, remember, and carry out very short and simple instructions; to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to make simple work-related decisions; and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  *Id.* at 358.  He opined Plaintiff was "not significantly limited" in all areas of social interaction and adaptation, but had "mild" limitation in social functioning.  *Id.* at 359, 371.  Dr. Biala believed Plaintiff was "moderately limited" with his ability to understand, remember, and carry out detailed instructions.  *Id.* at 358.  Dr. Biala concluded Plaintiff's cognition was "intact for simple tasks" and his concentration, persistence, and pace was "sufficient for 2 hour intervals, 8 hour day and 40 hour week."  *Id.* at 360.  In addition, Dr. Biala found Plaintiff had "no problems in [activities of daily living] or social skills," was "[s]ocially available for superficial contacts" and able to "adapt to workplace stressors."  *Id.* at 360, 373.

On March 19, 2009, Dr. Marena Vea reviewed Plaintiff's medical record and agreed with the assessment that Plaintiff was able to perform simple, repetitive tasks.  AR at 376.

Dr. Kamlesh Sandhu completed a medical source statement on March 25, 2010.  AR at 490-91.  Dr. Sandhu noted: "I have only seen this patient <u>one</u> time—on 1/27/10 for a medication follow up visit."  *Id.* at 490 (emphasis in original).  Dr. Sandhu noted: "it would appear he'd have difficulty remembering and carrying out technical and/or complex job instructions."  *Id.*  Dr. Sandhu believed it was difficult to assess Plaintiff's ability to deal with the public, because Plaintiff "was able to interact one on one . . . in [the] <u>office</u> setting. *Id.* (emphasis in original).  Further, Dr. Sandhu noted she was unable to assess Plaintiff's ability to understand, remember and carry out simple one-or-two step job instructions; to maintain concentration and attention for two hour increments; and to handle his own funds.  *Id.* at 490-91.  Dr. Sandhu opined Plaintiff had "chronic problems that will not resolve," but believed Plaintiff's "ADHD symptoms … improved with medication."  *Id.* at 491.

Dr. Sandhu provided a second medical source statement on June 3, 2010.  AR at 513-14.  She noted it was "[d]ifficult to assess fully" Plaintiff's abilities.  *Id.* at 513.  She noted Plaintiff "appears to

have some trouble answering complex questions and has a concrete thinking style." *Id.*  Given these facts, Dr. Sandhu believed Plaintiff "likely would have difficulty relating well with others." *Id.*  Also, due to "difficulty with communication [and] concrete thinking style," Dr. Sandhu believed Plaintiff "would likely not be able to work a full 8 hour day to day job." *Id.*  She opined Plaintiff had a "poor prognosis for developmental disorder/ mental retardation." *Id.* at 514.  According to Dr. Sandhu, Plaintiff was "doing fairly well with his attention and behavior." *Id.*

**B.    Hearing Testimony**

The ALJ held an administrative hearing on May 27, 2010.  AR at 519.  Plaintiff and his mother, Lucia Rodriquez, testified regarding Plaintiff's abilities and limitations.  In addition, Cheryl Chandler, a vocational expert, offered her opinion regarding work available in the nation economy.

1.    Plaintiff's testimony

Plaintiff reported he was twenty years old.  AR at 523.  Plaintiff stated that he participated in team sports in high school, including "the football team, track, and wresting." *Id.* at 529-30.  He explained competed in shot put, discus, and relay on the track team.  *Id.* at 530.  Plaintiff testified he played defensive tackle and offensive guard while on the football team for four years.  *Id.*  He said he "received a certificate of completion" from high school, rather than a diploma.  *Id.* at 524.

He testified he was attending a community college, where he had finished four semesters in the disabled student program.  AR at 524.  At the time of the hearing, his courses included college arithmetic, contemporary health issues, writing improvement, tennis, and football conditioning.  *Id.* at 526.  He worked with tutors for his English and math courses at a tutoring center once a day, for about two hours per visit.  *Id.* at 534-36.  Plaintiff said he had to be reminded more than once of what he was supposed to do on assignments in class.  *Id.* at 536.  Plaintiff said if he passed the requirements of the Special Ed classes, then he would go to General Ed.  *Id.* at 533.

Plaintiff said he had never held a job, and believed his "[c]ommunication and learning problem" prohibited him from doing so.  AR at 530.  Plaintiff testified he received treatment for his mental problems from Dr. Sandhu, and he believed his medications helped him.  *Id.* at 531.  Further, Plaintiff believed that the counseling he received on how to control his anger and focus was helpful.  *Id.* at 532.

Plaintiff explained he did not have a driver's license because he was "too nervous on the road" and was "not ready to drive." AR at 537.  Plaintiff said he "hear[d] it's too much responsibility and too many car accidents." *Id.*  He said his mother and step-father tried to teach him to drive, but he "got scared of the roads . . . [and] didn't want to do it." *Id.*  Plaintiff reported he used public transportation "once in a while," and took the bus if someone was not able to pick him up from school. *Id.* at 552.

According to Plaintiff, he was able to "get along with a lot of people," but it could depend on how they treated him. AR at 538.  He stated that if people did not pick on him, then he was "good with them" but if he disagreed with people, he would "probably get mad." *Id.*  Plaintiff described himself as "a nice person," and said that if he was angered, he would walk away so he would not get into a fight. *Id.* at 538-39.

Plaintiff reported his mom helped him do household chores, such as washing the car.  AR at 539.  In addition, Plaintiff stated his mom helped him find friends and was teaching him to speak Spanish.  *Id.*  He stated that he had to call his mother to ask how to do some of the chores he was asked to do, because he would "sometimes . . . get distracted by something, and . . . kind of . . . lose the focus." *Id.* at 539-40.  Plaintiff estimated he was able to focus "one hour, at the least" before he needed a ten-minute break.  *Id.* at 540.  He said his hobbies included spending time with his family and friends, going to the movies, and bowling.  *Id.* at 541.

2.     Third-party testimony

Lucia Rodriguez, Plaintiff's mother, was brought in to testify after Plaintiff.  AR at 543.  She reported that he son lived with her, and participated in the disabled students' program at Fresno City College.  *Id.*  Ms. Rodriguez stated Plaintiff did not "know how to fill out anything," and she completed all the necessary paperwork for him at the beginning of each term.  *Id.* at 544.  Further, Ms. Rodriguez stated she helped Plaintiff with his homework "[a]lmost every day." *Id.*  She said Plaintiff would get frustrated and then mad when trying to do his homework alone if "he doesn't understand something." *Id.* at 544-45.

Ms. Rodriguez believed her son was not able to work eight hours a day, five days a week, without supervision.  AR at 549.  She explained she had "to constantly remind him to do little tasks"

7

because Plaintiff "forgets pretty fast." *Id.* at 549-50.  According to Ms. Rodriguez, Plaintiff would call her at work "at least two or three times a week" when trying to do homework. *Id.* at 545.  In addition, she said Plaintiff would call for instructions on his chores, such as vacuuming or throwing out the trash. *Id.* at 547.  Ms. Rodriquez reported Plaintiff would get angry "quite a bit" over "little things," such as telling him things he was not ready to hear or being called by his full name. *Id.* at 548.  Further, she said Plaintiff liked to tap and clap a lot, which Ms. Rodriquez found "annoying." *Id.* at 548-49.

### 3.     Vocational expert testimony

Ms. Chandler, the vocational expert ("VE") testified after Plaintiff and his mother.  AR at 553. The ALJ asked the VE to consider "an individual with the same age and education," including "a high school completion without a degree, and some community college classes that appear to be aimed at increasing literacy and mathematic skills." *Id.* at 554.  In addition, the hypothetical individual had "no physical limitations"  and cognition was "intact of simple tasks; concentration, persistence, and pace sufficient for two-hour intervals, eight hours a day, 40 hours a week." *Id.*  Further, the individual was "socially available for superficial contacts, and . . . [could] adapt to work place stressors." *Id.*  Based upon these limitations, the VE opined the individual cold perform "unskilled work" in positions that did not involve "high people contact." *Id.* at 555.  Examples of unskilled positions included dishwasher at a restaurant or cafeteria, *DOT* 318.687-010; custodial work, *DOT* 381.687-010; landscape worker, *DOT* 405.687-010; and yard worker, *DOT* 301.687-018.[2]

Plaintiff's counsel asked the VE to consider an individual who had further mental limitations and "would need additional supervision to complete tasks, or stay on tasks, and successfully finish them." AR at 556-57.  The attorney explained supervision would be needed 'at least three-quarters of the time." *Id.* at 557.  The VE opined such limitations "wouldn't be compatible with a competitive employment market." *Id.*

Finally, the ALJ asked the VE to consider the opinion offered by Dr. Sandhu.  AR at 557. Specifically, the ALJ summarized the opinion as follows:  "This individual would have difficulty

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

remembering and carrying out technical and/or complex job instructions.  This individual has some difficulty processing information.  This individual will have difficulty with standing [sic] stress and pressures associated with an eight-hour work day." *Id.* at 558.  The VE opined the opinion was not sufficiently precise for her to offer an opinion regarding the individual's ability to perform work in the national economy.  *Id.*  Accordingly, the ALJ offered to keep the record open for Plaintiff to receive an updated opinion from Dr. Sandhu.  *Id.* at 558-59.

## C.    The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity from his application date of March 31, 2008.  AR at 14.  Second, the ALJ found Plaintiff had the following severe impairments: pervasive developmental disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder.  *Id.*  Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing, including Listings 12.02 and 12.05.  *Id.* at 14-15.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels."  AR at 15.  However, the ALJ found Plaintiff had non-exertional limitations, and opined: "the claimant's cognition is intact for simple tasks; concentration, persistence, and pace is sufficient for 2 hour intervals, an 8-hour day and a 40 hour workweek; he is socially available for superficial contacts; and can adapt to workplace stressors."  *Id.*  With this RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  *Id.* at 18.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  *Id.* at 19.

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ committed several errors in finding Plaintiff was not disabled under the Social Security Act.  First, Plaintiff contends the ALJ erred at step three of the sequential evaluation in finding his mental disorder did not satisfy a listing.  In addition, Plaintiff argues the ALJ erred by failing to credit the opinion of his treating physician, and evaluating credibility of his testimony and that of a third party.  On other hand, Defendant contends the ALJ's findings are free of legal error and supported by substantial evidence in the record.

**A.      The ALJ did not err in his evaluation of the Listings at step three.**

The Listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted, emphasis in original).  At step three of the sequential evaluation, the claimant bears the burden of demonstrating his impairments equal a listed impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5 (1987); 20 C.F.R. §§ 404.1520(d).  "If the impairment meets or equals a listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step."  *Bowen*, 482 U.S. at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The ALJ determined Plaintiff's physical impairments did not meet or medically equal the criteria of Listing 12.05.  AR at 14.  However, Plaintiff argues he satisfies the requirements of Listing 12.05(C).  (Doc. 20 at 16-18).

Listing 12.05 governs mental retardation, and requires a plaintiff to demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period…" 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.05.  In addition, paragraph "C" of Listing 12.05 requires a claimant to have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*  The Supreme Court explained, "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. at 530 (emphasis in original).

1.      Onset during the developmental period

To support he manifestation of significantly subaverage mental functioning, the evidence must "demonstrate[] or support[] onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.05.  Here, the evidence supports a finding that Plaintiff's mental impairment manifested itself during the developmental period, because Plaintiff was enrolled in special education courses throughout high school and into college.  Thus, Plaintiff satisfies the first requirement of Listing 12.05.  *See Sorter v. Astrue*, 389 Fed. App'x. 620, 622 (9th Cir. 2010) (observing a claimant

1   "was in special education classes throughout his school years, showing that his low intellectual

2   functioning manifested prior to age 22").

3       2.      Valid IQ score of 60 through 70

4       The ALJ concluded Plaintiff did "not have a valid verbal, performance, or full scale IQ of 60

5   through 70." AR at 15.  Rather, the ALJ determined Plaintiff "has a verbal IQ of 83, a performance IQ

6   of 77, and a full scale IQ of 78." *Id.* (citing AR at 353).  Plaintiff contends:

7       The record contained valid IQ scores of 70 or below secured well before the age of 22.
        For example, valid IQ testing performed October 6, 2003 [footnote], reflected a verbal
8       scale IQ score of 66, performance scale IQ score of 70, and a full scale IQ score of 67.
        [Citation.] Valid IQ testing performed February 16, 2005, similarly reflected a
9       performance IQ of 70.

10

11  (Doc. 20 at 16) (footnote and citations omitted).  Although Plaintiff acknowledges the IQ testing

12  performed in 2008 reflected higher IQ scores, Plaintiff contends the ALJ erred by failing to consider

13  the lowest of his IQ scores.  *Id.* at 17 (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.00(D)(6)(c)).

14  Because he had "valid IQ scores of 66, 67, and 70," Plaintiff asserts he satisfied this requirement of

15  Listing 12.05(C).  *Id.*

16      Defendant argues the ALJ did not err in declining to use Plaintiff's IQ scores from 2003 and

17  2005 to determine whether the requirements of Listing 12.05(C) were satisfied.  Defendant argues the

18  Regulations "refer[] to the lowest score (verbal, performance, or full scale IQ) obtained from *one* IQ

19  test, not the lowest IQ score from several different tests."  (Doc. 24 at 9) (citing 20 C.F.R. Part 404,

20  Subpart P, Appendix 1, § 12.00(D)(6)(c).  According to Defendant, "Plaintiff has no basis for relying

21  on the old IQ tests" and "the most weight should be given to the 2008 scores which were the most

22  recent and relevant, as Plaintiff's eligibility for SSI was being re-determined as of age 18, and this

23  testing was completed when he was 18 years old.  *Id.* at 10 (citing AR at 350-56).

24      Significantly, the IQ tests administered in 2003 and 2005 were no longer considered current or

25  valid by the Regulations.  Under the Regulations, "IQ test results obtained between the ages of 7 and 16

26  should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ

27  is 40 or above." 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.00(D)(10).  Plaintiff was 13 years old

28  when the IQ test was administered in 2003, and nearly 15 years old when the IQ test was given in 2005.

AR at 236, 458.  Because Plaintiff's IQ scores were over 40, the test results were only current for two years, and were no longer considered current under the Regulations when he applied for benefits as an adult in 2008.  Accordingly, the ALJ did not err by using only the IQ scores from 2008 to determine whether or not Plaintiff satisfied paragraph "C" of Listing 12.05.

In 2008, Dr. Swanson administered the WAIS-III test, and determined Plaintiff had a Verbal IQ of 83, a Performance IQ of 77 and a Full Scale IQ of 78.  AR at 353.  According to Dr. Swanson, these results were  "a valid representation of his current functioning."  *Id.*  Because Plaintiff did not have a score between 60 and 70, he has not satisfied the requirements of Listing 12.05(C).

**B.    The ALJ set forth legally sufficient reasons to give "little weight" to Dr. Sandhu's opinion**.

In this circuit, the opinions of three categories of physicians are distinguished: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 416.927(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician.  20 C.F.R. § 416.927(d)(2).  Thus, the Courts apply a hierarchy to the opinions offered by physicians.

An ALJ may reject the controverted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence."  *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").  The opinion of an examining physician may be rejected whether the opinion is contradicted by another.  *Magallanes*, 881 F.2d at 751.

1              1.      The ALJ's reasoning

2          Plaintiff contends the ALJ set forth insufficient reasons to reject the opinion of Dr. Sanhu, his

3    treating physician.  (Doc. 20 at 19-22).  Discussing of the medical evidence, the ALJ noted Dr. Sandhu

4    "reported that the claimant would have difficulty remembering and carrying out technical and/or

5    complex job instructions and would likely have difficulty in his ability to withstand stress and pressures

6    associated with an 8-hour workday and day-to-day work activity."  AR at 17 (citing AR at 490-91, 513-

7    14).  The ALJ gave this opinion "little weight because it is not consistent with the claimant's high level

8    of functioning. . ."  *Id.*  In addition, the ALJ found the opinion of Dr. Sandhu was "inconsistent with"

9    the opinions offered by Drs. Swanson, Biala, and Vea.  *Id.* at 17-18.

10         According to Plaintiff, the ALJ failed to recognize Dr. Sandhu opined Plaintiff "would likely

11   have difficulty relating well with others[;] understanding, remembering, and carrying out simple one-

12   or-two step instructions[;] dealing with the public[;] and maintaining concentration and attention."

13   (Doc. 20 at 20).  Notably, however, Dr. Sandhu believed it was "difficult to assess" these abilities,

14   though she believed they were "likely a challenge" because Plaintiff had "trouble answering complex

15   questions and has a concrete thinking style."  AR at 513.  Thus, it does not appear Dr. Sandhu offered

16   firm opinions regarding these abilities.  Nevertheless, the ALJ found Dr. Sandhu's opinion was not

17   consistent with the medical record and with Plaintiff's level of functioning.  *See* AR at 17-18.  The

18   Ninth Circuit has determined that these are specific, legitimate reasons for giving less weight to the

19   opinion of a treating physician.

20         The opinion of a physician may be discounted where it is inconsistent with a claimant's level

21   of activity.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Here, the ALJ observed Plaintiff

22   had a "high level of functioning," which was "demonstrated by [his] ability to compete in varsity team

23   sports and attend college with few absences."  AR at 17.  As observed by the ALJ: Plaintiff's "past

24   participation in sports presumably required that he attend regular practice sessions, learn plays and

25   routines, and appear for events in addition to completing school work."  *Id.* at 18.  The ALJ concluded

26   that "[t]he ability to do all of these things is inconsistent with Dr. Sandhu's opinion."  *Id.*  Thus,

27   Plaintiff's level of activity was a specific, legitimate reason for giving less weight to the opinion of Dr.

28   Sandhu.  *See Rollins*, 261 F.3d at 856 (where the treating physician set forth restrictions that "appear

to be inconsistent with the level of activity that [the claimant] engaged in," the ALJ set forth proper

reason for giving the opinion less weight).

Further, a medical opinion may be rejected where there is incongruity between a treating

doctor's assessment and the medical record, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2008), and where it is "unsupported by the record as a whole*." Batson v. Comm'r of the Soc. Sec.

Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).  In this case, the ALJ found the opinion of Dr. Sandhu

conflicted with the opinions offered by Dr. Swanson, an examining physician, as well as the opinions

of Drs. Biala and Vea, non-examining physicians.  AR at 17-18.  As noted by the ALJ, Dr. Swanson

found Plaintiff's "mental and emotional functioning fell within normal limits" and he "was able to

maintain concentration." *Id.* at 17 (citing AR at 355).  In addition, although Dr. Sandhu opined an

eight-hour work day was "likely to be difficult" for Plaintiff, Drs. Biala and Vea concluded Plaintiff

had the ability to perform simple tasks for eight-hour days. *Id.* (citing AR at 360, 373).  Therefore, the

medical record supports the ALJ's decision to give less weight to the opinion of Dr. Sandhu.

    2.    Substantial evidence supports the determination

In a Social Security Ruling[3], the Commissioner explained the term "substantial evidence"

"describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the

opinion *need not* prove by a preponderance that the opinion is wrong."  1996 SSR 4 LEXIS 9 at *8.

Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to

support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

Significantly, the opinion of an examining physician may be substantial evidence in support of the

ALJ's decision when the opinion is based upon independent clinical findings. *Orn v. Astrue*, 495 F.3d

625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  As noted by the

ALJ, Dr. Swanson tested Plaintiff's intellectual functioning, and found "his mental and emotional

functioning fell within normal limits."  AR at 17.  Further, Dr. Swanson concluded Plaintiff was able

"to understand, carry out, and remember simple instructions" and "maintain concentration." *Id.* at 356.

---

[3] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    Accordingly, the opinion of Dr. Swanson is substantial evidence in support of the ALJ's determination

2    that Plaintiff's "cognition is intact for simple tasks; concentration, persistence, and pace is sufficient for

3    2 hour intervals, an 8-hour day and a 40 hour workweek." *Id.* at 15.

4           Similarly, Drs. Biala and Vea opined Plaintiff had the ability to perform simple repetitive

5    tasks.  AR at 360, 376.  Specifically, Dr. Biala determined Plaintiff's cognition was "intact for simple

6    tasks" and his concentration, persistence, and pace was sufficient to sustain a forty-hour work week.

7    *Id.* at 360.  Because the opinions of Drs. Biala and Vea are consistent with Dr. Swansons's opinion

8    that Plaintiff could "understand, carry out, and remember simple instructions," their opinions are

9    substantial evidence in support of the ALJ's determination.  *Tonapetyan*, 242 F.3d at 1149 ("Although

10   the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate

11   reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence

12   when it is consistent with other independent evidence in the record").

13          Though the evidence may be "susceptible to more than one rational interpretation," the ALJ set

14   forth specific, legitimate reasons to give less weight to the opinion of Dr. Swanson, and the decision is

15   supported by substantial evidence in the record. Therefore, the Court must uphold the ALJ's evaluation

16   of the medical evidence.  *See Orn*, 495 F.3d at 630; *see also Matney*, 981 F.2d at 1019.

17   **C.     The ALJ's credibility determination is supported by clear and convincing reasons.**

18          In evaluating credibility, an ALJ must determine first whether objective medical evidence

19   shows an underlying impairment "which could reasonably be expected to produce the pain or other

20   symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell

21   v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if there is no evidence of malingering, the

22   ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing

23   reasons for rejecting his subjective complaints.  *Id.* at 1036.

24          An adverse credibility determination must be based on clear and convincing evidence where

25   there is no affirmative evidence of a claimant's malingering and "the record includes objective

26   medical evidence establishing that the claimant suffers from an impairment that could reasonably

27   produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d

28   1155, 1160 (9th Cir. 2008).  The ALJ may not discredit a claimant's testimony as to the severity of

15

symptoms only because it is unsupported by objective medical evidence.  *See Bunnell*, 947 F.2d at 347-48.  In addition, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

Factors that may be considered include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas*, 278 F.3d at 958-59.  Here, the ALJ determined: "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR at 25. However, the ALJ opined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . ."  *Id*.  Supporting these findings, the ALJ considered Plaintiff's activities and objective medical evidence.

### 1.    Plaintiff's activities

When a claimant spends the day engaged in activities that are transferable to a work setting, a finding of this fact may be sufficient to discredit a claimant's allegations of a disabling impairment." *Morgan*, 169 F.3d at 600 (citing *Fair*, 885 F.2d at 603).  For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances...").  Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ considered Plaintiff's activities including his enrollment in a non-degree program at Fresno Community College.  AR at 17.  The ALJ noted Plaintiff was "passing most of his classes, but failing or not passing some English and Math classes."  *Id*.  In addition, the ALJ observed Plaintiff "has tutoring every day for 2 hours and is in class for 50 minutes to one hour at a time," and formerly

participated in team activities in high school. *Id.* at 16-17.  The ALJ concluded Plaintiff's ability to

perform college work and participate in sports shows he "is capable of . . . at least simple repetitive full

time work." *Id.* at 18.  As the Ninth Circuit explained, "Although the evidence of [the plaintiff's] daily

activities may also admit of an interpretation more favorable to [him], the ALJ's interpretation was

rational, and [the court] 'must uphold the ALJ's decision where the evidence is susceptible to more

than one rational interpretation.'" *Burch*, 400 F.3d at 680 (quoting *Magallanes*, 881 F.2d at 750).  Thus,

the ALJ's conclusion that Plaintiff's ability to take courses at the community college is consistent with

the ability to do simple work supports the adverse credibility determination.

  2. Objective medical evidence

   Generally, "conflicts between a [claimant's] testimony of subjective complaints and the

objective medical evidence in the record" can constitute "specific and substantial reasons that

undermine . . . credibility." *Morgan*, 169 F.3d at 600.  The Ninth Circuit explained, "While subjective

pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

medical evidence, the medical evidence is still a relevant factor in determining the severity of the

claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see*

*also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for

discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"); SSR

96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the

objective medical evidence" in determining credibility, but statements "may not be disregarded solely

because they are not substantiated by objective medical evidence").

   Here, the ALJ did not base his decision solely on the fact that the medical record did not

support the degree of symptoms alleged by Plaintiff.  Thus, the objective medical evidence was a

relevant factor in determining Plaintiff's credibility.  However, in citing to the medical evidence as

part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the

testimony is contradicted by the record.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)

("general findings are an insufficient basis to support an adverse credibility determination").  Rather,

the ALJ "must state which . . . testimony is not credible and what evidence suggests the claimants are

not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

1    The ALJ noted Plaintiff alleged he had difficulty with concentration and focus, but "Dr.

2    Swanson opined that the claimant was able to maintain concentration." AR at 17.  Likewise, as

3    discussed above, Drs. Biala and Vea determined Plaintiff had the ability to focus to perform simple,

4    repetitive tasks.  Therefore, the ALJ carried his burden to identify "what evidence undermines the

5    testimony," and the objective medical evidence supports the ALJ's credibility determination. *See*

6    *Holohan*, 246 F.3d at 1208.

7    **D.     The ALJ properly rejected the third-party testimony of Ms. Rodriguez.**

8          The ALJ must consider statements of "non-medical sources" including spouses, parents, and

9    persons in determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1513(d)(4); *see also*

10   *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled,

11   an ALJ must consider lay witness testimony concerning a claimant's ability to do work.").  As a

12   general rule, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability

13   to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v.*

14   *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis, internal citations omitted).  To discount the

15   testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of

16   the witness. *Dodrill*, 12 F.3d at 919.

17         The ALJ found the testimony of Ms. Rodriguez was "unpersuasive, because of the claimant's

18   high degree of functioning, including his college work and participation in sports." AR at 16.  Plaintiff

19   argues that the record demonstrates he did not have a high degree of functioning, and this was not an

20   adequate reason for rejecting the testimony provided by his mother.  (Doc. 20 at 27).  However, as

21   discussed above, the record supports this conclusion.  Consequently, the ALJ carried his burden to

22   articulate germane reasons for rejecting the testimony of Ms. Rodriguez.

23   **E.     Testimony of the Vocational Expert supports the conclusion that Plaintiff is not disabled.**

24         An ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her

25   functional capacity, would be able to do; and (2) the availability of such jobs in the national economy."

26   *Tackett*, 180 F.3d at 1101.  When eliciting testimony from the VE, the ALJ may pose "hypothetical

27   questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational

28   expert's consideration." *Id.* (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279

(9th Cir. 1987)).  Only ;imitations supported by substantial evidence must be included in the question. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir. 2001).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Although Plaintiff asserts the ALJ failed to credit the testimony of the vocational expert in response to a hypothetical question based upon the limitations set forth by Dr. Sandhu (Doc. 20 at 29-30), the ALJ properly rejected the opinion of Dr. Sandhu.  Because the limitations were not supported by the record, the ALJ was not required to credit the testimony.  *See Gallant*, 753 F.2d at 1456.  With a hypothetical based upon the limitations set forth by Drs. Swanson and Biala, the vocational expert determined Plaintiff would be able to perform unskilled work in the national economy with limits on public contact including dishwasher, custodial work, and landscape worker.  AR at 19.  The "weight of the medical evidence supports the hypothetical questions posed by the ALJ," and as a result the testimony of the vocational expert supports the ALJ's determination that Plaintiff is able to perform work in the national economy.  *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987).

## CONCLUSION AND ORDER

The ALJ's consideration of the Listings at step three of the evaluation was proper, and Plaintiff has not carried his burden to demonstrate his mental impairment satisfies the requirements of Listing 12.05(C).  In addition, the ALJ set forth specific, legitimate reasons to give less weight to the opinion of Dr. Sandhu, supported by substantial evidence in the record.  Further, the ALJ identified clear and convincing reasons to reject the credibility of the testimony of Plaintiff, including his activities and the objective medical evidence.  Likewise, the ALJ identified specific, germane reasons to reject the lay witness testimony of Ms. Rodriguez.

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled as defined by the Social Security Act is supported by substantial evidence in the record, including the testimony of the vocational expert.  Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.

///

Accordingly, **IT IS HEREBY ORDERED**:

1.      The administrative decision is **AFFIRMED**;

2.      Plaintiff's motion for summary judgment (Docs. 19-20) are **DENIED**;

3.      Defendant's cross-motion for summary judgment (Doc. 24) is **GRANTED**; and

4.      The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff Christopher Gonzalez

IT IS SO ORDERED.

Dated:   **April 24, 2013**                            **/s/ Jennifer L. Thurston**
                                                  UNITED STATES MAGISTRATE JUDGE